■ Gus Bevona, Respondent, v Roxanne Management, Appellant. [721 NYS2d 3] —Amended order and judgment (one paper), Supreme Court, New York County (Elliott Wilk, J.), entered July 6, 1999, which confirmed arbitration awards of November 14, 1996 and June 24, 1997, directing that Roxanne Management reinstate Juan Mendez as a porter/doorman at 215 West 90th Street, New York, New York, and reimburse him for back pay commencing December 15, 1996, unanimously modified, on the law, to preclude back pay in addition to comparable salary, to remand the matter for further proceedings, and otherwise affirmed, without costs.

Roxanne Management is a real estate company headed by Adam Katz, who is also the head of two other real estate companies, Reads Ventures Corp. and Jadam Equities Ltd. On October 26, 1994, Reads purchased a building located at 215 West 90th Street, New York, New York, from 215 Management Company. Reads declined to be bound by the collective bargaining agreement (CBA) entered into between 215 Management

and the Realty Advisory Board on Labor Relations, Inc., which, among other things, required the arbitration of employment disputes. After the purchase, Reads installed Jadam as managing agent of the building, which continued to employ the same staff, including Juan Mendez, a member of Local 32B-32J, Service Employees International Union, AFL-CIO, who worked as a porter/doorman from June 1992 until his discharge on November 1, 1995. Roxanne issued paychecks to Mendez from March 9, 1995, until his discharge. Mendez also received a letter from Jadam with a check for sick pay from Roxanne. Thus, it appears that Reads owned the building, Jadam and Roxanne managed it, and Adam Katz was the head of all three companies.

Despite not being bound by the CBA, Roxanne participated in, and did not challenge, arbitration proceedings pursuant to the CBA dealing with the discharge of Mendez. After six hearings, the arbitrator, in an Opinion and Award dated November 14, 1996, upheld Mendez's claim for reinstatement and ordered the conduct of an inquest regarding back pay.

On May 20, 1997, the arbitrator held a hearing at which Katz alleged that on March 1997, Mendez had threatened Katz's life. In two implementation awards dated June 12, 1997 and June 24, 1997, the arbitrator awarded Mendez full pay, minus statutory deductions, "from December 15, 1996 up to and including the date of reinstatement," but no back pay from November 1, 1995 to November 14, 1996, because of Mendez's failure to mitigate his losses by seeking employment. Roxanne, however, refused to reinstate Mendez because of the alleged threats. Mendez, nevertheless, has been working at a union job with comparable salary at another building since December 1997.

Although the IAS Court on June 8, 1998, at the request of the Union, confirmed the arbitration award on default, the parties later stipulated to vacate the confirmation, at which point Roxanne submitted opposing papers and a cross-petition seeking to vacate the arbitration award. In its papers, Roxanne argued that there was no agreement to arbitrate; that the arbitrator "committed misconduct" in not reopening the reinstatement hearing upon learning of Mendez's alleged threats; that the award does not require a setoff of wages earned by Mendez in his new position; and that the award is indefinite. In an order and judgment dated December 16, 1998, the IAS Court confirmed the arbitration award and denied the cross-petition, finding that Roxanne had waived its right to challenge the arbitrator's jurisdiction; that the arbitrator credited

Mendez's denial of the threats; that there was no requirement that wages earned by Mendez in his new job be deducted; and that the award was not indefinite.

On appeal, Roxanne argues, *inter alia,* that the arbitrator exceeded his authority and that the award constitutes punitive damages in violation of public policy.

An arbitration award is indefinite under CPLR 7511 (b) (1) (iii) and thus warrants judicial intervention when it leaves the parties unable to determine their rights, or does not resolve the controversy, or creates a new controversy (*Matter of Snyder-Plax v American Arbitration Assn.,* 196 AD2d 872, *lv denied* 83 NY2d 757). The arbitration award in this case awarding Mendez his regular pay from approximately one year after his termination to the date of his reinstatement is not indefinite. Even though the arbitrator did not use the words "or comparable employment," it is clear that back pay would not continue after Mendez commenced a comparable job. This interpretation is consistent with the arbitrator's power under the CBA to award back pay for "time lost," and his refusal to award Mendez back pay for approximately one year after his termination because of his failure to mitigate his loss of income by seeking comparable employment. An interpretation of the award that does not permit a setoff for the salary Mendez earns from his comparable employment, thus resulting in double pay, is so unreasonable as to fall outside the realm of possible judicial approval. The award must be read in a rational and consistent way. The arbitrator awarded pay, consistent with the CBA, for time lost, and refused pay for the period in which Mendez did not mitigate damages. To construe the award as Mendez would like would be in clear conflict with any mitigation standard.

There is no merit to Roxanne's argument that the arbitration award must be vacated because neither Roxanne nor Reads or Jadam was a party to the CBA. First, whether Jadam is bound by the arbitration award is not an issue in this case as Jadam is not a party to this action. Second, Roxanne, which *is* party to this action, waived its right to vacate the award on the ground that there was no agreement to arbitrate, because it failed to seek a stay of arbitration within 20 days after receiving the notice of intention to arbitrate and, more important, participated in the arbitration proceeding on the merits (CPLR 7503 [c]; *Matter of RRN Assocs. [DAK Elec. Contr. Corp.],* 224 AD2d 250).

The argument that the arbitrator committed misconduct, which is a ground for vacating an arbitration award under

CPLR 7511 (b)·(1) (i), by refusing to reopen the reinstatement hearing after learning of Mendez's alleged threats is also meritless. By failing to assert that it specifically requested a reopening of the reinstatement hearing or that the arbitrator refused any such request (*see, Henegan Constr. Co. v Bettinger & Leech,* 196 AD2d 763), Roxanne has not presented evidence demonstrating arbitrator misconduct (*Matter of Dember Constr. Corp. [New York Univ.],* 190 AD2d 537). Concur—Sullivan, P. J., Rosenberger, Ellerin, Wallach and Rubin, JJ.